

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7459 | **DATE** | 8/27/2001 |
| **CASE TITLE** | Chester Florian, et al. vs. Sequa Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for summary judgment [76 and 78] are granted. This action is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 29 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 105 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 28 PM 3: 23 | | |
| TP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHESTER FLORIAN, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 98 C 7459 |
| v. ) | |
| ) | |
| SEQUA CORPORATION, et al. ) | Judge Joan B. Gottschall |
| ) | |
| Defendants. ) | |

DOCKETED
AUG 29 2001

## MEMORANDUM OPINION AND ORDER

### Background

Plaintiffs Chester Florian and Kenneth Rolfe brought this action against Sequa Corporation, United Steelworkers of America, AFL-CIO-CLC ("International Union"), Local Union 3911-09 of the United Steelworkers of America ("Local Union"), James Boyle, and Richard Damron.[1] Plaintiffs' third amended complaint contains four counts. In Count I, plaintiff Florian alleges that Sequa and the Local Union conspired to have Florian fired because of his unsuccessful attempt to run for union office, in violation of § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185. In Count II, plaintiff Rolfe alleges that Sequa failed to recall him from layoff because of the same alleged conspiracy and his association with Florian, in violation of § 301 of the LMRA. In Count III, Florian alleges a state law defamation claim against the defendants. In Count IV, Rolfe alleges a retaliatory discharge claim under Illinois law against Sequa. Plaintiffs also filed a charge with the National Labor Relations Board ("NLRB"), making essentially the same factual allegations as those found in Counts I and II. Ultimately, the NLRB case was heard by an administrative law judge, who determined in an order dated January 31, 2001, that Precoat Metals (a division of Sequa) had not engaged in any

---

[1] All claims by Florian against Damron were dismissed by an agreed order entered on January 16, 2001.

unfair labor practices in violation of the National Labor Relations Act ("NLRA") with respect to Florian or Rolfe. Defendants had already moved for summary judgment in this case by the time the ALJ's decision was announced. After the decision, the defendants argued in their reply memoranda in support of summary judgment that plaintiffs' LMRA claims are subject to issue or claim preclusion as a result of the ALJ's decision. The court permitted the parties to fully brief the issue. Because the court concludes that the ALJ's decision precludes the relitigation of issues necessary to the finding of liability under LMRA, and because the court declines to exercise jurisdiction over the remaining state law claims, defendants' motions for summary judgment are granted.

## Analysis

Plaintiffs' LMRA claims in this action are hybrid § 301/fair representation claims, alleging that Sequa breached the collective bargaining agreement, and that the union breached its duty of representation. The claims in a hybrid action are interdependent. To succeed against either the employer or the union, the plaintiff must show that the employer breached the CBA *and* that the union breached its duty of fair representation. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983)). The ALJ determined that a preponderance of the evidence presented at the NLRB hearing showed that Florian would have been suspended and discharged even had he not run for union office, or expressed interest in running later. The ALJ determined that there was no credible evidence of a conspiracy between the union and the employer to terminate Florian. (Ex. 68 at 178). The ALJ concluded that Florian was suspended, and ultimately terminated, as a result of his driving between two company buildings to punch in and out of work, despite specific warnings that a rule prohibiting such conduct would be strictly enforced. (Exh. 68 at 91). As to

2

Rolfe, the ALJ determined that Rolfe had been restricted by his doctor to light-duty assignments, and that there was no evidence that the employer had any light-duty work available, making it impossible for the employer to recall Rolfe to work. (Ex. 68 at 179). The ALJ further found that "a preponderance of the credible evidence [did] not support the allegation that [the union] had failed to fairly represent Rolfe." (Ex. 68 at 179). The ALJ thus concluded that Sequa had not violated the NLRA with respect to Florian or Rolfe. (Ex. 68 at 189). Because the plaintiffs, to succeed on their § 301 claims, must show both that the employer violated the terms of the CBA and that the union failed to fairly represent them, it appears that the ALJ's decision may preclude the relitigation of issues crucial to plaintiffs' claims.[2]

The Seventh Circuit has stated that collateral estoppel, or issue preclusion, "is allowed to prevent the relitigation of any legal or factual issue that has been 'actually litigated and determined by a valid and final judgment.'" *Frye v. United Steelworkers of America*, 767 F.2d 1216, 1220 (7th Cir. 1985) (quoting Restatement (Second) of Judgments § 27); *see also Olchowik v. Sheet Metal Workers' Int'l Ass'n*, 875 F.2d 555, 557 (6th Cir. 1989). "An express finding of fact or finding of law in the earlier judgment is sufficient to give it preclusive effect . . . , if that finding was necessary and essential in the earlier judgment." *Id.* (citation omitted). In order for administrative agency's decision to have a preclusive effect, "the original action must have been properly before the agency," and "'the court must find that the same disputed issues of fact were before [the administrative agency] as are before the court, that the

---

[2] The decisions of administrative agencies may be given preclusive effect when the "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . ." *United States v. Utah Construction Co.*, 384 U.S. 394, 422 (1966) *cited in Frye v. United Steelworkers of America*, 767 F.2d 1216, 1219 (7th Cir. 1985) (giving preclusive effect to an NLRB decision); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (preclusion applies to administrative agency acting in judicial capacity to resolve fact issues properly before it).

3

agency acted in a judicial capacity, and that the parties had an adequate opportunity to litigate the issues before the agency.'" *Id.* at 1220 (quoting *Lightsey v. Harding, Dahm & Co.*, 623 F.2d 1219, 1221 (7th Cir. 1980)) (alteration in original). "[I]t is not the similarity between the types of litigation or actions involved but between the factual issues and their roles in the respective actions that is important." *Id.* at 1220.

There is no dispute that the case was properly before the NLRB or that the agency acted in a judicial capacity by resolving disputed factual issues between the parties. As in *Frye*, the issues here, and the incentives to litigate those issues, are identical to those in the NLRB action. At the heart of Florian's LMRA claim is his allegation that he was terminated without cause in violation of the CBA, because Sequa and the union conspired to terminate him for his unsuccessful attempt to run for union office. This allegation was also the foundation of his NLRA action, but the ALJ found that the preponderance of the evidence did not support it. Similarly, both Rolfe's LMRA and NLRA claims are based on his allegation that he was not recalled to work because of his connection to Florian and the aforementioned conspiracy. But the ALJ found that he would not have been recalled even absent any alleged conspiracy, because he was restricted to light-duty and there were no light-duty assignments available at the time. The plaintiffs here were the complainants in the NLRB hearing, were represented by counsel at the hearing, and had the opportunity to present evidence, make objections, and cross-examine adverse witnesses. The incentive to litigate these factual issues at the hearing was obvious, as they were the heart of the plaintiffs' NLRA claims. Moreover, Precoat Metals, a division of Sequa, and the union defendants were respondents in the NLRB hearing. Thus, there is identity of parties, identity of issues, and identity of incentives to vigorously litigate those issues. In these circumstances, issue preclusion is appropriate. *See Frye*, 767 F.2d at 1221.

4

Plaintiffs make four distinct arguments against preclusion. First, they argue that the defendants acquiesced in plaintiffs' claim-splitting, and therefore should not be permitted to argue preclusion at this stage. Second, plaintiffs argue that they could not have brought their LMRA claims at the NLRB hearing, and therefore this court must hear them. Third, plaintiffs contend that other issues of fairness counsel against preclusion in this case. Fourth, plaintiffs argue that defendants failed to cite any persuasive authority in support of their preclusion arguments.

Plaintiffs' first argument is that the defendants permitted both actions to go forward, and therefore acquiesced in plaintiffs' claim-splitting. Plaintiffs cite *Imperial Const. Mgt. Corp. v. Laborers Int'l Union of N. America Local 96*, 729 F. Supp. 1199 (N.D. Ill. 1990) and *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp. 1060 (N.D. Ill. 1998) in support of their argument. Unlike the defendants in those cases, however, the defendants here have repeatedly expressed their position that the two separate actions should not proceed simultaneously. In their initial memorandum in support of summary judgment, filed before the ALJ's decision was announced, the union defendants argued that plaintiffs' claims were preempted by the NLRA, and that the NLRB had exclusive jurisdiction over the matter. (Union Defs' Memo. in Supp. of Summ. J. at 11-12). Sequa also argued that the NLRB had primary jurisdiction over plaintiffs' claims. (Sequa's Memo. in Supp. of Summ. J. at 3-9). Sequa further argued that this court should defer its ruling in this case until the NLRB had ruled, since the NLRB had already held extensive hearings and considered the parties' briefs. (*Id.* at 7-8). Immediately after the ALJ announced his decision, the defendants argued to this court that res judicata barred plaintiffs' claims and relitigation of the issues presented in the NLRB hearing. (Sequa's Reply Memo. in Supp. of Summ. J. at 7-9). In no sense have the defendants ever "acquiesced" in plaintiffs' pursuit of their

claims in two separate fora.

Plaintiffs' second argument is that they could not have brought their LMRA claims at the NLRB hearing. Plaintiffs point out that the NLRA requires them to bring specific claims before the NLRB, a forum with limited jurisdiction. Thus, they conclude, this court must hear the claims that they could not bring in the NLRB action. Plaintiffs cite *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 865 (7th Cir. 1996). Plaintiff is correct in that *claim* preclusion is inappropriate where the plaintiff's choice of initial forum is constrained because some of the claims are committed to one forum with limited jurisdiction. *Waid*, 91 F.3d at 865. Indeed, in *Waid*, the Seventh Circuit declined to find that an administrative proceeding precluded plaintiff's federal claims for this reason. But the court in *Waid* went on to find that *issue* preclusion applied, despite the forum constraints, and that the facts found in the administrative proceeding should not be relitigated in the federal district courts. *Id.* at 866-67. In this case, issue preclusion is fatal to plaintiffs' claims. The facts found by the ALJ with respect to Sequa's reasons for discharging Florian and not recalling Rolfe are dispositive of plaintiffs' LMRA claims. The court need not consider whether the doctrine of claim preclusion applies.

Plaintiffs' third argument is that other issues of fairness should persuade this court to consider plaintiffs' claims, notwithstanding the possibility that the preclusion doctrines would otherwise apply. In *Avitia v. Metropolitan Club of Chicago, Inc.*, the Seventh Circuit stated:

> Traditionally, the courts have been receptive to claims of unfairness when (1) the series of proceedings raising the issue preclusion question involved different forums that afforded litigants disparate measures of procedural protection . . ., (2) the prevailing party concealed material information in the first case . . ., or (3) the issue was not clearly relevant to the initial litigation and so the party being estopped had no incentive to vigorously litigate the question in the first instance.

924 F.2d 689, 691 (7th Cir. 1991) (citations omitted); *see also Frye*, 767 F.2d at 1221 ("[I]t is

6

also true that considerations of fairness can make application of collateral estoppel inappropriate for a number of reasons.") (citing *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 332 (1979)). The *Frye* court made it clear that once the essential requirements for preclusion are met, the burden of showing the unfairness of preclusion lies with the party opposing its application. The court stated, "[W]hen all factors required for collateral estoppel are present, it is the party opposing preclusion who must demonstrate that applying collateral estoppel in a specific case would result in particularized unfairness." *Frye*, 767 F.2d at 1221.

Plaintiffs argue that preclusion would be unfair because important evidence was withheld from the ALJ by the local union. Plaintiffs refer to the minutes of a July 12, 1998 "Unit Meeting," at which Florian was present. The ALJ concluded that Florian had been warned that the company rules would be strictly enforced - including the rule against driving between the buildings to punch in or out. In reaching this conclusion, the ALJ relied, in part, on the testimony of several witnesses who claimed that a warning about strict enforcement of the rules was given at the July 12 meeting. But plaintiffs imply, without directly asserting, that no such warning was issued at the meeting. Plaintiffs point to the minutes of the meeting, which do not indicate a warning about strict enforcement of the rule against driving between the buildings. (Pls' Exh. 32). Plaintiffs claim that the NLRB subpoenaed the minutes of the meeting, but that the local union withheld them. (Pls' Res Judicata Brief, at 10). Plaintiffs contend that the minutes were turned over only after the ALJ's decision had been announced. However, plaintiffs offer no evidentiary support for their contention that the minutes were subpoenaed or that the local union improperly withheld them. More importantly, the minutes are insubstantial evidence of what took place at the meeting. Having examined the minutes, it is clear that they are not meant to be a complete transcript of everything that was said at the meeting, but rather a

7

shorthand version of the significant decisions or comments. It is apparent to this court that the warning testified to could have been given, despite the absence of any notation about the warning in the minutes. Moreover, the evidence of some sort of warning at the meeting was overwhelming. Four individuals testified that a warning was issued at the meeting, and nobody who testified refuted that fact. (Exh. 68, at 76). Even if the plaintiffs could show that no warning was issued at the meeting, the ALJ found that at least one other specific warning about driving between the buildings was issued to Florian at some time other than at the July 12 meeting. (Exh. 68, at 83). Thus, plaintiffs' reliance on the missing minutes of the July 12 meeting in support of their unfairness argument is a red herring. The minutes are not very probative of whether Florian was actually warned, and the evidence presented at the hearing clearly supports the conclusion that he was so warned. In any event, the plaintiffs have not shown that the local union wrongfully withheld the minutes. Plaintiffs have not met their burden of showing that the application of issue preclusion would result in particularized unfairness.

Plaintiffs next argue that preclusion would be unfair because NLRA liability standards and remedies available are narrower than those under the LMRA. Plaintiffs further contend that the issues before the NLRB were narrower than the issues presented in the LMRA claims.[3] As noted above, however, the Seventh Circuit has stressed that it is the similarity of the issues and their importance in the action that is crucial, not the similarity of the actions. *Frye*, 767 F.2d at 1220. The fact that the reach of LMRA may be broader than that of the NLRA is unimportant.

---

[3] Plaintiffs add a specific argument that no issue of whether Sequa breached the CBA in connection with Rolfe was before the NLRB. But Rolfe's factual assertions at the NLRB hearing mirror his allegations in this case – that he was not recalled to work because of his connections with Florian. Rolfe's NLRA claim failed because the ALJ concluded that Rolfe was restricted to light duty work, and no such work was available at the time. (Exh. 68, at 179). Similarly, Rolfe's LMRA claim will fail if he cannot show that Sequa breached the CBA by failing to recall him. If Sequa had a valid reason for not recalling him, Rolfe cannot make such a showing. Thus, the factual issue determined by the ALJ is dispositive of Rolfe's LMRA claim.

What is important for purposes of preclusion is that the ALJ had to resolve factual questions that are also dispositive of the plaintiffs' LMRA claims. The ALJ found that a preponderance of the evidence did not support plaintiffs' assertions about why they were discharged or not recalled. Because plaintiffs had the same incentives and opportunities to litigate those issues at the NLRB hearing as they would in this court, issue preclusion is appropriate.

This is true even though the remedies under LMRA may be broader than those available under the NLRA. Plaintiffs point out that LMRA plaintiffs may be able to recover prejudgment interest, attorneys fees and costs, while such remedies are not available under the NLRB. But plaintiffs have not shown that these differences in remedies are drastic enough to create a difference in the incentives to litigate their claims. Attorneys fee awards can, in some cases, provide an extra incentive to prosecute a claim vigorously. But in this case it seems highly unlikely that, because of the possibility of attorneys fees, plaintiffs here have a significantly enhanced incentive to prove that they were discharged or not recalled for improper reasons. The plaintiffs could have recovered significant backpay awards in the NLRB proceedings, and clearly had an incentive to pursue that award by presenting any evidence tending to prove the truth of their allegations concerning their discharge and failure to be recalled to work. This is not a situation where a party settles or decides not to dispute certain complex facts in the first suit due to the small amount of money involved, and then another party seeks to give the first suit preclusive effect in a second suit involving much more significant sums of money. *Cf. Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 873 F.2d 229, 233-34 (9th Cir. 1989) (first action, involving approximately $3,300, was not given preclusive effect in second action, potentially involving $100,000,000 in liability coverage). Thus, the court finds the differences in available remedies too insignificant to make preclusion unfair.

Finally, plaintiffs argue that preclusion would unfairly deny them their right to have a jury decide the factual issues. On this point, however, the Supreme Court has stated that "the presence or absence of a jury as factfinder" is "basically neutral," and therefore an insufficient procedural difference to make preclusion unfair. *Parklane Hosiery*, 439 U.S. at 332 n.19. Plaintiff has failed to show that the application of issue preclusion to this case would result in particularized unfairness. Thus, plaintiffs' unfairness arguments fail.

Plaintiffs' fourth, and final, argument is that defendants failed to cite any persuasive authority on the issue of preclusion. This argument is easily disposed of. In their reply brief in support of summary judgment, defendants Sequa and Boyle cited *Utah Construction Co.*, a Supreme Court case, and *Olchowik*, a Sixth Circuit case, both of which deal with the preclusive effect of agency decisions. The *Olchowik* case considers issue preclusion in connection with an NLRB decision, and even refers to *Frye*, the Seventh Circuit case from which this court has drawn much of the applicable law. When given an opportunity to more fully brief the preclusion issue, the defendants relied heavily on *Frye*, in which a district court's finding that an NLRB decision precluded litigation of plaintiff's federal claims was affirmed. Plaintiffs' argument that defendants did not cite relevant, persuasive authority with respect to preclusion is simply incorrect.[4]

---

[4] Plaintiffs made one other argument in the text of their motion to defer decision on the res judicata issue, which the court will now briefly consider. Plaintiffs argued that the ALJ's decision should not be given preclusive effect because plaintiffs have the opportunity to file exceptions to the ALJ's decision, at which time the Board could reopen the record and potentially alter the decision. Then, the parties would have the opportunity to move for reconsideration of the Board's decision. This argument is unavailing. An administrative determination that is "otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Checker Taxi Co. v. National Product. Workers Union*, 636 F. Supp. 201, 204 (N.D. Ill. 1986) (quoting Restatement Second of Judgments § 13, comment f). Thus, the ALJ's decision is given preclusive effect as a final determination, despite the possibility that plaintiffs still have unexhausted means of attacking the decision.

## Conclusion

For the foregoing reasons, the court concludes that plaintiffs are precluded from re-litigating certain factual issues critical to their LMRA claims in this court. Thus, summary judgment is granted as to Counts I and II. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Counts III and IV, the remaining state law claims. This action is hereby terminated.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 27, 2001